Calderwood v. Trent.

JOHN CALDERWOOD *v.* WILLIAM TRENT.

The propriety of allowing any amendments to a petition for an injunction, is questionable. None should ever be allowed, unless manifestly for the promotion of justice; and an affidavit of the truth of the allegations, and of the causes that make the amendments necessary, should always be required. An amended petition should never be allowed in such a case, where delay seems to be the object.

A trivial error in the amount of the costs of a judgment, is no ground for enjoining the execution. The injured party may have it corrected, under the order of the judge of the court which rendered the judgment, in the clerk's office, where all the records and documents necessary to enable the proper costs to be taxed, may be found.

The damages allowed by the third section of the act of 25th March, 1831, on the dissolution of an injunction, are not to be calculated on the whole amount of the debt for which the execution was issued, where it was not enjoined for the whole amount. They should be calculated on the amount enjoined.

APPEAL from the District Court of Ouachita, *Curry*, J.

*Garrett*, for the appellants.

*McGuire*, for the defendant.

GARLAND, J. The case of the present defendant against the plaintiff, was before us at the October term, 1842, and the judgment of the inferior court was then affirmed. 3 Rob. 109. The judgment of this court was recorded in the court from

Calderwood v. Trent.

which the appeal was taken; whereupon an execution was issued, and the sheriff was proceeding to execute it, when the defendant therein, the present plaintiff, after one or more unsuccessful applications to the judge to cause the amount of property seized to be reduced, presented a petition for an injunction on a variety of grounds; but as the judge only granted it on three, we shall state them.

The first is, that costs are charged by the clerk and sheriff, which, as he believes, are not authorized by law; and he asks that those officers may be ordered to produce and file an explicit fee bill, showing the various items of their costs; also, that no part of the costs of an injunction suit in the said court, should be charged to him, as he had succeeded in that case, and Trent was liable for those costs; and further, he alleges, no tax fee can be charged against him.

The second ground is, that on the 3d of December, 1842, the sheriff had made a sum of $317 17, by the sale of a female slave, and had only credited $46 56 on the execution, when he should have given credit for the first named sum.

The third ground is, that a man slave, named Charles, has never been seized, and cannot be sold; that he is not in the parish; was never in the possession of the sheriff, and that that officer has no control over him; that attempting to sell him under such circumstances would be a sacrifice of him; and that he cannot be sold, until the other property seized is discussed.

The defendant filed an answer, commencing with a general denial of all the allegations in the petition, and then averred that the injunction was illegally issued and ought to be dissolved, as no affidavit was made according to law. The answer then asserts that the grounds for injunction stated are untrue, and insufficient to maintain it. That as to the first ground, the allegations are too general in relation to the fees, and state nothing specific, or definite. As to the second ground, it is asserted that the proper credit was placed on the execution, before the injunction was issued. To the third ground the answer is, that the slave Charles was in the possession of the plaintiff when the seizure was made; but that he was secretly conveyed out of the parish, and fraudulently sold. It is, therefore, asked, that the

injunction be dissolved, with the highest rate of interest, costs, and damages.

At the term of the court subsequent to obtaining the injunction, the plaintiff presented an amended petition, alleging various matters that had occurred since the injunction was granted, which was not sworn to by the plaintiff. Its reception was objected to, and the objection overruled by the court, when the defendant took a bill of exceptions. The propriety of allowing any amendment to a petition for an injunction, in any case, is very questionable, and none should be allowed, except it is most manifestly for the promotion of justice, under peculiar circumstances ; and an affidavit of the verity of the allegations, and of the causes that make the amended petition necessary, should be required in every such case. In no instance should an amended petition be permitted when the object appears to be delay. There is no affidavit appended to the amendment proposed, and we do not see that the statements themselves are very material. We are, therefore, of opinion, that the judge erred in permitting the amended petition to be filed.

The plaintiff also propounded interrogatories to Stevens, the sheriff, in relation to the costs and fees in the execution, to answering which no objection was made. For answers to these questions, he stated, on oath, that the amount of his costs is $79 16, as stated in a detailed bill, in the various suits between the parties, which bill of fees, he says, is correct, as he believes. With these answers, two long and detailed bills of the clerk's and sheriff's fees are filed.

The evidence in relation to the credit claimed is, that the attorney of the plaintiff went to the sheriff's office, and asked to look at the execution in the case of *Trent* v. *Calderwood*, and finding on it an endorsement, or memorandum of a credit, for only $46 56, availed himself of it to obtain an injunction, without using any effort to have it corrected. As soon as the counsel for Trent ascertained the state of the matter, he immediately had the credit for $317 17, entered on the execution, before any process was served, although the petition was filed.

The evidence in relation to the negro, is, that the sheriff, knowing that the plaintiff had such a slave, intended to levy

Calderwood v. Trent.

the execution on him, and made out a notice of seizure accordingly, and also an advertisement. At the time, he did not have possession of the slave Charles; and when he attempted to get possession, he found that the plaintiff, or some other person, had secretly carried the slave out of the parish.

The court below dissolved the injunction, and allowed the sum of two hundred and fifty dollars as damages, being ten per cent on the sum of $2,500, the amount of the debt enjoined. From this judgment the plaintiff, and his surety, B. Hemken, have appealed.

The judge has not given us the reasons for his judgment; and we have sought in vain through the record, for any evidence of equity on behalf of the plaintiff. He has not, in our opinion, presented such evidence as will justify us in disregarding the oath of the sheriff, who says that he believes the costs are correctly taxed in the bills filed with his answers. If they are not, it is in the power of the party to have it correctly done, under the order of the judge, in the clerk's office, where all the records and documents are to be found to enable the proper costs to be entered. A trivial error in assessing the costs, is no ground for an injunction; and if it were, the plaintiff has not presented us the means of correcting it.

As to the credit of $317 17 claimed, the plaintiff has obtained the benefit of it, and we have no doubt would have had it without this suit, if he had asked for it. But this did not suit his purpose. We do not believe he had any apprehension of having it to pay a second time, when he asked for this injunction.

The conduct of the plaintiff in relation to the slave Charles, is as indefensible as his other proceedings in this case. After the sheriff found that he could· not get possession of the slave, it is not alleged or pretended that he intended to sell the negro. He doubtless hoped he might get possession of him before the sale; and that he did not, is the fault of the plaintiff himself. If he was anxious to avoid a sacrifice of the slave, in consequence of his absence, it was easy to prevent it by delivering him to the sheriff.

This case is one of the instances in which the equitable reme-

dy of injunction has been used, to embarrass and delay a party in the collection of a just debt, by legal technicalities, and the judge below seems to have so considered it; and in his zeal to punish properly the party, he has overlooked the proper basis on which to estimate the damages given by the act of the Legislature of 1831. He has allowed ten per cent damages on the sum of $2,500, the amount of the principal debt in the execution; but, by reference to the order for the injunction, it will be seen that the sheriff was restrained as to a part only. We have examined the testimony closely, and the most we can make of the items enjoined is $1200 14, being the appraised value of the slave Charles, the costs of the proceeding, and the credit claimed. The damages assessed are $250, on the above mentioned sum, which is more than the twenty per cent allowed by law. This compels us to release the judgment, in order to correct this error, although the plaintiff should, in our opinion, pay the highest rate of damages allowed by law.

It is, therefore, ordered and decreed, that the judgment, so far as it dissolves the injunction, be affirmed, but so for as it relates to the damages, it is reversed; and proceeding to give such judgment as ought to have been given in the court below, it is ordered and decreed, that the defendant, Trent, do recover of the plaintiff, John Calderwood, and his surety, B. Hemken, *in solido*, the sum of $240 damages, being at the rate of twenty per cent on the sum enjoined; the said Calderwood and Hemken paying the costs in the court below, being bound therefore jointly and severally; the defendant, Trent, paying the costs of this appeal.